IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HENRY E. MCKINNON, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 07-1694 (JBS/AMD) |
| v. | : | |
| ALBERTO R. GONZALES & DEPARTMENT OF JUSTICE, | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

James B. Dougherty, Jr., Esq.
LAW OFFICES OF JAMES B. DOUGHERTY, JR.
Post Office Box 267
205 Tuckerton Road
Suite 203
Medford, NJ 08055
      Attorney for Plaintiff

PAUL J. FISHMAN
United States Attorney
By:  Paul A. Blaine,
      Assistant United States Attorney
401 Market Street, 4th Floor
Camden, New Jersey  08101
      Attorney for Defendants

**SIMANDLE**, District Judge:

## I.  INTRODUCTION

This matter is before the Court on Defendants' motion for reconsideration [Docket Item 31].  Defendants request reconsideration of this Court's Order granting in part and denying in part Defendants' motion for summary judgment [Docket Item 29].  The Court must decide whether it overlooked the

factual matters identified by Defendants, and if so, whether they are dispositive.  Because, as discussed below, the Court concludes that it did not overlook any dispositive factual matters, the motion will be denied.

## II.  BACKGROUND

Plaintiff Henry E. McKinnon, a forty-six-year-old African-American man, is a senior Unit Manager for the Federal Correctional Institution (FCI) at Fort Dix, New Jersey.  He alleges that his employer discriminated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, et seq. ("Title VII").  The facts of the case are set forth in detail in the Opinion on Defendants' motion for summary judgment [Docket Item 28].  They are summarized below to the extent they are relevant to this motion.

Between August 2004 and March 2006, Plaintiff's immediate supervisor was Associate Warden Jacqueline Nichols.  The complaint arises in part out of various conflicts between the two.  On April 11, 2005, Plaintiff attempted to call Nichols about a recent conflict, and reached her secretary.  The parties dispute the contents of the call.  Defendants allege that Plaintiff made various threatening remarks.

In May 2005, Plaintiff met with the Warden at the time, John Nash, on three occasions to complain that he felt that he was

being harassed by Nichols.  (Nash Dep. 27:19-22.)  Nash did not believe Plaintiff was being harassed.  (Id. at 32:1-23.) Plaintiff asserts that Nash warned Plaintiff not to do anything that Plaintiff would regret. (McKinnon Dep. 55:11-21.)  Nash denies having made any such comment to Plaintiff.

An investigation into the April 11 phone call was initiated at some point, and it eventually resulted in Plaintiff's suspension for three days.  The timing of the investigation, as well as the relationship between the investigation and other events that transpired during the summer of 2005, are also the subject of dispute between the parties.  Plaintiff alleges that the investigation did not begin until just three days after he commenced an EEO complaint.

On June 6, 2005, following an exchange of emails between Plaintiff and Nichols concerning scheduling matters, Plaintiff wrote to Nichols (and sent a copy to Nash) asking her to "acknowledge this response as my official filing of an EEO Complaint against you for Harassment, Retaliation/Reprisal, Threats, Interfering With An On-going EEO Investigation, etc." (Blaine Cert. Ex-G5, at 1.) Plaintiff met with his EEO counselor that day, complaining that he had been harassed.  (Blaine Cert. Ex-B.)

On June 9, 2005, Plaintiff and the other witnesses to the events of April 11, 2005 were interviewed by John Pittman, FCI

3

Fort Dix's Special Investigative Agent ("SIA Pittman"), (Blaine
Cert. Ex-G5, at 3).  On summary judgment, the Court found that
"there appears to be no evidence in the record that establishes
that the investigation was launched immediately after the April
11, 2005 telephone call" as Defendants contend.  [Docket Item 28,
at 10-11.]

        In August 2005, Plaintiff was transferred from Unit Six to
Unit Three.  According to Plaintiff, none of the unit managers
"wanted to go to Unit 3 . . . because that's the hostile unit."
(Id. at 161:5-11)  Plaintiff amended his EEO complaint in
September 2005 to assert that he had been transferred to a
hostile working environment (Unit Three), (Blaine Cert. Ex-B1, at
1), and amended it again in November 2005 after he was
disciplined as a result of the phone call investigation. (Blaine
Cert. Ex-B2, at 1.)

        Plaintiff filed the Complaint in this action on April 9,
2007 [Docket Item 1].  He alleges that he was retaliated against
for engaging in Title VII-protected activity (Count I), that he
was discriminated against on account of his sex (Count II), and
that he was exposed to a hostile work environment (Count III).

        Defendants filed a motion for summary judgment on February
20, 2009 [Docket Item 21].  The motion was granted except as to
Plaintiff's retaliation claim, to the extent that the claim was
premised upon Defendants' allegedly retaliatory investigation and

discipline of Plaintiff for the April 11, 2005 telephone call,
and the allegedly retaliatory transfer of Plaintiff to Unit
Three.

The Court denied summary judgment as to the retaliation
claims because the Court found that a reasonable fact-finder
could conclude that there was a causal relationship between the
adverse employment actions and the protected EEO activity.  As to
the causal connection between the EEO complaint and the
investigation of the phone call, the Court concluded:

> [T]he earliest evidence of the investigation is from June
> 9, 2005 – three days after Plaintiff contacted the EEO
> counselor – when the SIS Investigator interviewed the
> witnesses to the April 11, 2005 telephone call.  The
> three-day interval between the filing of Plaintiff's EEO
> complaint and the apparent commencement of the
> investigation into Plaintiff's three-month-old telephone
> conversation is itself sufficient to demonstrate a causal
> connection at the prima facie case stage. [Citations
> omitted].

[Docket Item 28, at 42.]  As to the causal connection between the
EEO complaint and the unit transfer, the Court concluded:

> Warden Nash, the ultimate decisionmaker responsible for
> the August 22, 2005 transfer, had warned Plaintiff not to
> file an EEO complaint, and had thereby exhibited animus
> toward Plaintiff's prior and proposed future Title VII-
> protected conduct.

[Id. at 43.]  In a footnote, the Court added: "Warden Nash was
ultimately responsible for the decision regarding the unit
reassignments, although he testified that he relied heavily upon
AW Nichols' input.  (Nash Dep. 59-60.)" [Id. at 43 n.24.]

In the motion for reconsideration, Defendants argue that the
Court overlooked three dispositive facts: (1) the fact that
Nichols reported the April 11, 2005 telephone call to Nash
immediately after its occurrence; (2) the fact that Nash was
responsible for initiating the phone call investigation, and that
he had no knowledge of McKinnon's EEO activity on June 6, 2005,
until three weeks later on June 27, 2005; and (3) the fact that
Nash was not actually the one ultimately responsible for the
transfer decision, citing Nash's testimony that he "wouldn't have
told [Nichols] who to move."  (Nash Dep. 59-60.)


## III.  DISCUSSION

### A.  Standard of Review

Local Civil Rule 7.1(i) governs the Court's review of
Defendants' motion for reconsideration.  Rule 7.1(i) requires the
moving party to set forth the factual matters or controlling
legal authorities it believes the Court overlooked when rendering
its initial decision.  L. Civ. R. 7.1(i).  To prevail on a motion
for reconsideration,  the movant must show:

> (1) an intervening change in the controlling law; (2) the
> availability of new evidence that was not available when
> the court . . . [rendered the judgment in question]; or
> (3) the need to correct a clear error of law or fact or
> to prevent manifest injustice.

Max's Seafood Café ex rel. Lou-Ann, Inc., v. Quinteros, 176 F.3d
669, 677 (3d Cir. 1999).  To prevail under the third prong, the

movant must show that "dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered."  P. Schoenfeld Asset Management LLC v. Cendant Corp., 161 F. Supp. 2d 349, 353 (D.N.J. 2001) (internal quotations and citations omitted).

The standard of review involved in a motion for reconsideration is high and relief is to be granted sparingly. United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994); Maldonado v. Lucca, 636 F. Supp. 621, 629 (D.N.J. 1986).

**B.  Analysis**

1.  Nichols immediate reporting of the call

Defendants contend that the Court overlooked the fact that Nichols immediately reported the April 11, 2005 telephone call to Nash.  Defendants' support for this "fact" is Plaintiff's counter-statement of facts which incorrectly cites Nichols' deposition as stating that she immediately reported the call, when in fact the deposition merely states that she reported it at some point.  (Pl.'s Counter-Statement of Material Facts, ¶ 52 (citing Nichols Dep. 58:1-11).)  Defendants admitted this paragraph of Plaintiff's counter-statement, and argue that since under L. Civ. R. 56.1(a), "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion," the Court must view it as an undisputed fact.

Even assuming the Court must accept as true for the purposes of summary judgment that Nichols immediately reported the phone call to Nash, Defendants' argument rests on the unstated premise that the report of the call is uncontroverted evidence that the investigation began before the filing of the EEO complaint.  But a phone call reporting an incident is not necessarily evidence of an investigation being launched.  On the contrary, a reasonable fact-finder could conclude that the fact that the allegedly threatening call was immediately reported but witnesses were only interviewed months later, after the EEO complaint, only underscores Plaintiff's argument that the investigation was retaliatory.  The immediate report of the phone call does not alter the Court's conclusion, drawing all reasonable inferences favorable to Plaintiff as the party opposing summary judgment, that "the earliest evidence of the investigation is from June 9, 2005."  [Docket Item 28, at 42 (emphasis added).]

### 2.  Nash's knowledge of Plaintiff's EEO filing

Defendants contend that the Court overlooked what they characterize as the undisputed fact that Nash had no knowledge of Plaintiff's EEO complaint until June 27, 2005, when he met with the EEO Counselor, well after the investigation was initiated (Nash Dep. 34-35; Def.'s Ex-B, at 4 [EEO Counselor's Report].) But Defendants incorrectly characterize the record.  Defendants

cite Plaintiff's counter-statement of facts for the proposition that this fact is undisputed.  The cited paragraph states, "Although Nash initially denied any knowledge of McKinnon's EEO complaint or the continued friction between Nichols and McKinnon, when shown the EEO counselor's report, Nash admitted that he was aware of the complaint and the numerous complaints of harassment, retaliation and hostile work environment McKinnon complained of." (Pl.'s Counter-Statement of Material Facts, ¶ 15.)   Defendants' response to this paragraph is "<u>Disagree</u>.  Warden Nash acknowledged that the EEO counselor's report stated the counselor met with him on June 27, 2005, regarding McKinnon's EEO allegations."  (Defs.' Response to Pl.'s Counter-Statement of Material Facts, ¶ 15 (emphasis added).)  Nowhere does Plaintiff admit Defendants' contention, raised for the first time in its reply brief, that Nash first learned of the Plaintiff's June 6 EEO activity on June 27.

The Court did not overlook the date of Nash's June 27 meeting.  Instead, the Court relied on Nash's knowledge that McKinnon was filing an EEO complaint based on Plaintiff's e-mail of June 7, 2005.  The e-mail in question asked Nichols to "acknowledge this response as my official filing of an EEO Complaint against you for Harassment, Retaliation/Reprisal, Threats, Interfering With An On-going EEO Investigation, etc." (Blaine Cert. Ex-G5, at 1.), and was sent the same day Plaintiff

contacted his EEO counselor about making a complaint.

Defendants acknowledge the e-mail, but argue that unless the e-mail was itself protected activity, the e-mail is irrelevant. This argument, even if correct, would not be sufficient grounds for reconsideration as it would simply be an instance of the Court having drawn a legal conclusion about the relevance of the e-mail with which Defendants disagree.[1]

### 3. Nash's testimony that he "wouldn't have told [Nichols] who to move."

Finally, Defendants argue that the Court overlooked Nash's testimony with regard to the unit transfer decision that he "wouldn't have told [Nichols] who to move." (Nash Dep. 59-60.) However, Defendants acknowledge in their own brief supporting the

---

[1] Defendants' legal argument is, in any case, incorrect. Informing his supervisor that he would be meeting with the EEO counselor because of actions he perceived as harassment is protected activity by itself, given the other knowledge Nash had about Plaintiff's complaints of harassment from the May 2005 meetings. See Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006) (holding that informal protests to management regarding discriminatory employment practices can be protected activity). But even if the e-mail had been too vague about the relevant employment practices to qualify as protected activity, the e-mail still made Nash aware that Plaintiff would be engaging in protected activity. An explicit statement from the complaining employee is more than sufficient for that purpose. Cf. Ridley v. Costco Wholesale Corp., 217 Fed. App'x 130, 134 (3d Cir. 2007) (finding notice of protected activity based on circumstantial evidence). Indeed, there would still be a basis for Title VII liability even if Plaintiff had not engaged in protected activity and Nash's later decisions were based on an incorrect belief or perception that Plaintiff had engaged in protected activity. See Fogleman v. Mercy Hospital, Inc., 283 F. 3d 561, 562 (3d Cir. 2002).

motion that the Court cited the very pages of the deposition
transcript Defendants argue the Court overlooked.

As with the other facts Defendants identify, the Court did
not overlook this testimony.  The Court stated, "Warden Nash was
ultimately responsible for the decision regarding the unit
reassignments, although he testified that he relied heavily upon
AW Nichols' input (Nash Dep. 59-60.)" [Docket Item 28, at 43
n.24.]  Defendants simply disagree with the Court's legal
conclusion that a decision-maker who adopts a subordinate's
recommendation is still a decision-maker for the purposes of
assessing whether discriminatory animus played a role in an
employment decision.  A disagreement with the Court's considered
legal conclusion is not an argument appropriate for a motion for
reconsideration.[2]

---

[2]  Even if the Court could entertain Defendants' new legal
argument at this stage, Defendants cite no authority for the
proposition that adopting a subordinate's innocent recommendation
of an adverse employment action for a discriminatory reason is
not a discriminatory act.

11

## IV.   CONCLUSION

Because Defendants do not raise any dispositive factual matters that were brought to the court's attention but not considered, the motion for reconsideration will be denied.  The accompanying Order shall be entered.


**January 26, 2010**                    **  s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        United States District Judge

12